**IN THE UNITED STATES DISTRICT COURT
FOR NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. |
| Plaintiff | **Complaint for Foreclosure and Possession** |
| STEFFAN E. MANNO, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ANTOINETTE MANNO; MRS. STEFFAN E. MANNO, HIS WIFE; JOSEPH MANNO; ADRIANA MANNO; MR. MANNO, HUSBAND OF ADRIANA MANNO; STATE OF NEW JERSEY; JERSEY SHORE UNIVERSITY MEDICAL CENTER | |
| Defendant(s) | |

The UNITED STATES OF AMERICA, by and through its attorneys, Frank J. Martone, P.C., states the following claims against the defendants:

**PARTIES**

1.      Plaintiff, Department of Housing and Urban Development, is an agency of the United States of America, (hereinafter referred to as "United States of America" having an office at 301 NW 6th Street, Suite 200, Oklahoma City, Oklahoma.

2.      Deed dated January 31, 1958, between Marianna Alcaro and Frank Alcaro, her husband and Joseph Manno and Antoinette Manno, husband and wife, recorded in the Monmouth County Clerk's/Register's Office on January 31, 1958, in Book 2817, Page 173.

3.      Upon information and belief Joseph Manno, original owner died, date of death August 29, 1987.  Title became vested in Antoinette Manno, his wife**,** as surviving tenant by the entirety and sole owner of the subject premises. Joseph Manno's interest in the property is solely vested to Antoinette Manno, his wife and there are no liens against the property as a result of his ownership.

3a.     Joseph Manno did not execute the mortgage and is not a necessary defendant.

4.      Upon information and belief, ANTOINETTE MANNO, original owner, died on November 3, 2014.    Plaintiff's inquiry revealed an Application for Probate was filed with the

Monmouth County Surrogate's Court under Docket #246299.  The Last Will & Testament of Antoinette Manno named Joseph Manno and Stephan Manno as Executors.  Joseph Manno renounced his rights as executor. Said Renunciation was filed with the Monmouth County Surrogate's Office on June 22, 2016.  Steffan E. Manno (a/k/a Stephan Manno) was named Executor of the Estate of Antoinette Manno.  Letters Testamentary were issued on June 22, 2016 to Steffan E. Manno, Executor.   The Last Will & Testament revealed the following heirs/beneficiaries at law and next of kin:  Joseph Manno, grandson, Steffan E. Manno, grandson (noted in the Will as Stephan Manno, noted on the filed Probate as Steffan E. Manno) and Adriana Manno, granddaughter (name misspelled in the Last Will and Testament as Adrienne Manno).

(a).    STEFFAN E. MANNO is also known as STEPHAN MANNO and is being designated herein as STEFFAN E. MANNO.

(b).    STEFFAN E. MANNO is hereby made a party defendant in his capacity as Executor of the Estate of Antoinette Manno and Individually as an heir/beneficiary at law and next of kin of the decedent Antoinette Manno, and for any interest he may have in the subject property.

(c).    JOSEPH MANNO is hereby made a party defendant as an heir/beneficiary at law and next of kin of the decedent, Antoinette Manno, and for any interest he may have in the subject premises.   The subject premises being foreclosed is not the primary marital residence of Joseph Manno.

(d).    ADRIANA MANNO is hereby made a party defendant as an heir/beneficiary at law and next of kin of the decedent, Antoinette Manno, and for any interest she may have in the subject premises.

(e).    The present marital status of STEFFAN E. MANNO cannot be ascertained and defendant MRS. STEFFAN E. MANNO, HIS WIFE the unknown spouse/domestic partner/civil union partner of STEFFAN E. MANNO is hereby named for any interest or right she may hold in the property.  Any title interest, dower/curtesy or possessory right, if any, acquired by MRS. STEFFAN E. MANNO, HIS WIFE was subsequent to the subject mortgage.   Any interest or right MRS. STEFFAN E. MANNO, HIS WIFE has in such property is subordinate and subject to the aforesaid mortgage.

(f).    The present marital status of ADRIANA MANNO cannot be ascertained and defendant MR. MANNO, HUSBAND OF ADRIANA MANNO the unknown spouse/domestic partner/civil union partner of ADRIANA MANNO is hereby named for any interest or right he may hold in the property.  Any title interest, dower/curtesy or possessory right, if any, acquired by MR. MANNO, HUSBAND OF ADRIANA MANNO was subsequent to the subject mortgage.  Any interest or right MR. MANNO, HUSBAND OF ADRIANA MANNO has in such property is subordinate and subject to the aforesaid mortgage.

5.    The State of New Jersey is hereby made a party defendant by virtue of its interest in any unpaid transfer, estate and/or inheritance taxes, which may be due by reason of the death of Antoinette Manno.

6.    Defendants set forth below are holders of docketed judgment(s) in the Superior Court and their liens are subordinate to that of plaintiff, and they are joined because of the judgment that they hold.

(a).

```
                         SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-023129-2016              CASE NUMBER: DC  004948  15
DATE DOCKETED: 02/08/16           DATE OF JUDGMENT IN S.C.P.: 12/04/15
TYPE OF ACTION: CONTRC-REG
VENUE: MONMOUTH
                                              DEBT: $      1,132.00
                                              COSTS: $         94.64
                                              DCKG: $          35.00
 CREDITOR(S):
      JERSEY SHORE UNIVERSITY MEDICAL CENTER
                    1945 ROUTE 33
                      NEPTUNE, NJ 07754
               ATTORNEY: CELENTANO STADTMAUER & WALENTOWICZ
                      1035 ROUTE 46 EAST
                      PO BOX 2594
                      CLIFTON NJ 07015
 DEBTOR(S):
      ANTOINETT MANNO
               72 MAPLE AV, WEST LONG BRANCH, NJ 07764
               ATTORNEY: PRO SE
                      ---------------
               ANTOINETTE MANNO ADDED TO OUR INDEX.
                      *** End of Abstract ***
```

## JURISDICTION AND VENUE

7.    Jurisdiction is based on 28 U.S.C. §1345, which provides that the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer, and upon 12 U.S.C. 1715 *et seq.*

8.      Venue is proper in this district under 28 U.S.C. §1391 and §1396 as the transaction which is the subject matter of this Complaint took place entirely in this district, and the real estate which is the subject of this transaction is located in this district.

**FACTS**

9.      The mortgagor, ANTOINETTE MANNO, prior to the execution of the note and mortgage, was duly advised and counseled regarding the United States Home Equity Conversion Mortgage (HECM) loan program, which program is regulated and set forth in 24 CFR Part 206, *et seq.* and all subsequent handbooks (4330.1 REV-5), mortgage letters, etc. as set forth by the Secretary of the Department of Housing and Urban Development.  The purpose of this program is set forth in 24 CFR 206.1, and as "set out in section 255(a) of the National Housing Act, Public Law 73-479, 48 STAT. 1246 (12 U.S.C. 1715z-20)"; being further regulated by Handbook 4330.01 Rev. 5 and all subsequent mortgage letters as issued and set forth by the Secretary of the Department of Housing and Urban Development.

10.     On or about November 27, 2009, ANTOINETTE MANNO, executed and delivered to GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP, a Home Equity Conversion Fixed Rate Note, attached hereto as **Exhibit A**, incorporated herein and made a part hereof as it fully written herein.  (Note). Under paragraph 2, of the Note, titled: **Borrower(s) Promise to Pay: Interest**, the mortgagor, Antoinette Manno, agreed to the following, to wit:

> In return for amounts to be advanced by Lender to a maximum principal amount of $609,000.00, to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated November 27, 2009 (Loan Agreement), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of Five and 56/100 percent (5.560%) per year until the full amount of principal has been paid.

11.     Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, the mortgagor, ANTOINETTE MANNO executed and delivered to

GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP, a Home Equity Conversion Mortgage, a copy of which is attached hereto as **Exhibit B**, incorporated herein and made a part hereof as if fully written herein (Mortgage).  Said Mortgage was duly recorded on December 8, 2009 in Book OR-8809, at Page 9694, MONMOUTH County Clerk's/Register's Office, New Jersey.  Said real estate is within the jurisdictional limits of the Court.  Said mortgage was not a purchase money mortgage.

12.    The mortgaged premises are described as follows:

All that certain tract or parcel of land and premises situate in the Borough of West Long Branch, County of MONMOUTH and State of New Jersey being more particularly described as follows:

See attached **Exhibit C**.

Tax Lot 11 a/k/a 11, 12, 13, Block 26, commonly known as 72 Maple Avenue, West Long Branch, NJ 07764.

The metes and bounds legal description attached to the recorded mortgage is the same metes and bounds legal description contained in the recorded mortgage, however, the metes and bounds legal description failed to include the Situate paragraph.  The metes and bounds legal description is hereby reformed to include the Situate Paragraph as more particularly described on the attached Exhibit "C".

13.    On November 27, 2009 by assignment bearing that date, GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, LP assigned said Note and Mortgage to METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A. which Assignment was recorded in the Clerk/Register's office of Monmouth County, New Jersey on December 29, 2009 in Book OR-8813 of Assignments of Mortgage for said County at Page 2573.  See **Exhibit D**.

14.    On September 28, 2012 by assignment bearing that date, METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A. assigned said Note and Mortgage to CHAMPION MORTGAGE COMPANY which Assignment was recorded in the Clerk/Register's office of Monmouth County, New Jersey on October 11, 2012 in Book OR-8975 of Assignments of Mortgage for said County at Page 4772.  See **Exhibit E**.

15.     On June 10, 2013 by assignment bearing that date, CHAMPION MORTGAGE COMPANY assigned said Note and Mortgage to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT which Assignment was recorded in the Clerk/Register's office of Monmouth County, New Jersey on June 21, 2013 in Book OR-9020 of Assignments of Mortgage for said County at Page 9636.  See **Exhibit F**.

16.     The mortgagor ANTOINETTE MANNO, was deemed deceased on November 3, 2014.

17.     The Mortgage provide, at paragraph 9, titled **Grounds for Acceleration of Debt**, "(a) Due and Payable.  Lender may require immediate payment in full of all sums secured by this Security Instrument if: (i) a Borrower dies and the Property is not the principal residence of at least one surviving Borrower".   ANTOINETTE MANNO was the only borrower on the Note and Mortgage.

18.     Demand for payment of all sums due under the Note and Mortgage was made, and payment has not been paid.

19.     The Defendant(s), ANTOINETTE MANNO is indebted to the United States of America on behalf of the Secretary of Housing and Urban Development and there remains due the following sums to the Plaintiff.  (See Statement of Account, attached hereto as **Exhibit G**, incorporated herein and made a part hereof as if fully written herein.)

| | | |
|---|---|---|
| (a) | Unpaid Principal | $335,126.34 |
| (b) | Interest accrued in accordance with the note/mortgage: at the annual rate of 5.560% per annum | $182,621.96 |
| (c) | MIP Advances for tax payments and insurance Set forth in 24 CFR 206.27 & 206.103 *et seq.* and HUD Handbook 4330.1 (13-14) | $24,542.77 |
| (d) | Service Fee set forth in HUD Handbook 4330.1 (13-15) | $2,850.00 |
| | Total (as of October 27, 2017) | $545,141.07 |

20.     Said Note and Mortgage contained an agreement that if any of the installments of taxes, assessments, water rents, charges, impositions or liens, levied upon the premises should remain in default, the mortgagee may pay the same, and such amount paid shall be a lien on said lands, added to the amount of the mortgage debt and secured by this mortgage.

21.     During the course of this action, the plaintiff may be obligated to make advances for the payment of taxes, insurance premiums, and necessary expenses and curative payments to preserve the security, and such sums advanced under the terms of the Note, together with interest, are to be added to the amount due on the mortgage debt and secured by the plaintiff's mortgage.

22.     On November 3, 2014, default occurred. The entire principal and interest, insurance and taxes and other charges became due and payable on plaintiff's mortgage and has not been paid.  Plaintiff has elected that the whole of the unpaid principal and interest shall now be due.

23.     The following instruments or liens of record in the Office of the Clerk's/Register's of MONMOUTH County, New Jersey which affect or may affect the premises described herein all of which instruments or liens are subordinate to the lien of the mortgage set forth above.

23(a).  Home Equity Conversion Second Mortgage from ANTOINETTE MANNO, A SINGLE WOMAN to SECRETARY OF HOUSING AND URBAN DEVELOPMENT, dated November 27, 2009, recorded December 8, 2009, in Mortgage Book OR-8809, Page 9703 in the maximum principal amount of $609,000.00.  Plaintiff is also the holder of the Home Equity Conversion Second Mortgage however, plaintiff wishes to report the lien only and does not wish to foreclose this mortgage at this time, attached hereto as **Exhibit H.**

24.     Any interest or lien which any of the defendants herein has or claims to have in or upon the said mortgaged premises or some part thereof is subject to the lien of plaintiff's mortgage.

## COUNT ONE

### Foreclosure on the Mortgaged Premises

25.     Plaintiff repeats the allegations contained in Paragraphs 1 through 24 of the Complaint and makes same as part hereof as if repeated at length.

26.     As a result of ANTOINETTE MANNO default under the mortgage, Plaintiff is entitled to immediate payment of the entire unpaid balance due and owing under the loan documents, with interest accruing on such at the rate provided for under the mortgage, together with reasonable attorneys' fees and other charges as provided for under the mortgage.

WHEREFORE, plaintiff prays for judgment as follows:

(a)     Fixing the amount due on its mortgage.

(b)     Barring and foreclosing the defendants and each of them of all equity of redemption in and to said lands.

(c)     Directing that the plaintiff be paid the amount due on its mortgage with interest and costs.

(d)     Adjudging that said lands be sold according to law to satisfy the amount due plaintiff.

(e)     Appointing a receiver of rents, issues and profits of said lands.

(f)     Such other and further relief as the Court deems just and equitable.

### SECOND COUNT

### Possession of Mortgaged Premises

27.     Plaintiff repeats any and all allegations of Paragraphs 1 through 26 of the Complaint and makes same a part hereof as if repeated at length.

28.     By reason of the default in the terms of the mortgage referred to in the First Count of the Complaint, and by reason of the terms of the mortgage, plaintiff is entitled to possession of the premises described herein.

29.     Defendant(s), STEFFAN E. MANNO, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ANTOINETTE MANNO; MRS. STEFFAN E. MANNO, HIS WIFE; JOSEPH MANNO; ADRIANA MANNO; MR. MANNO, HUSBAND OF ADRIANA MANNO and/or its tenants or assigns, are now in possession of the premises described herein and have at all times deprived plaintiff of possession of said premises.

WHEREFORE, plaintiff prays for judgment as follows:

(a)     That plaintiff or the purchaser at the foreclosure sale recovers possession of the mortgaged premises against said defendants or anyone holding under them.

(b)     Damages for mesne profits.

(c)     Costs.

(d)     Such other and further relief as the Court deems just and equitable.

## THIRD COUNT

30.     Plaintiff repeats any and all allegations of Paragraphs 1 through 29 of the Complaint and makes same a part hereof as if repeated at length.

31.     Inadvertently and due to scrivener's error, the metes and bounds legal description attached to plaintiff's recorded mortgage failed to include the Situate Paragraph.

**WHEREFORE**, plaintiff demands judgment on the Third Count of this Complaint reforming the metes and bounds legal description to correct the scrivener's error to include the Situate paragraph in the metes and bounds legal description, as more particularly described on the attached Exhibit "C".

## DESIGNATION OF TRIAL COUNSEL

Frank J. Martone, Esq. is hereby designated as trial counsel for the Plaintiff, UNITED STATES OF AMERICA.

### CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned attorney certifies that there are no other actions pending or contemplated at this time related to the subject matter of this action.

### CERTIFICATION PURSUANT TO NEW JERSEY COURT R. 4:5-1 AND R. 4:64-1

In accordance with Rule 4:5-1, I hereby certify that the matter in controversy is not the subject of any action pending arbitration proceeding.  There is no other action or arbitration proceeding contemplated, nor is there any other party who should be joined in this action.

In accordance with Rule 4:64-1(a), I hereby further certify that a title search of the public record has been received and reviewed for the purpose of identifying any lien holders and/or other person and entities with an interest in the property that is subject to foreclosure.  The effective date of the title search is November 2, 2017.

### CERTIFICATION OF DILIGENT INQUIRY TO BE ANNEXED TO RESIDENTIAL MORTGAGE FORECLOSURE COMPLAINTS PURSUANT TO NEW JERSEY COURT RULE 1:5-6(c)(1)(E) AND RULES 4:64-1(a)(2) and (3)

Frank J. Martone, Esq., of full age, hereby certifies and says:

1.     I communicated by e-mail with the following named employee(s) of THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, who stated that he/she personally reviewed the documents submitted to the Court and that he/she confirmed their accuracy.

2.     The name, title and responsibilities of the plaintiff's employee(s) with whom I communicated are: GAYLENE FOX, PARALEGAL SPECIALIST, OFFICE OF COUNSEL, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; OVERSEE FORECLOSURE FILES.

3.     Based on my communication with the above-named employee(s) of plaintiff, as well as my own inspection of the loan information supplied by plaintiff and other diligent inquiry, I execute this certification to comply with the requirements of Rule 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1(a)(2) and (3).

4.      I am aware that I have continuing obligation under Rule 1:4-8 to amend this certification if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support for any factual assertions proffered by plaintiff in any court filings or documents in this case.

Respectfully submitted this ____9th____ day of ____February_____, 2018

By:      _____
Frank J. Martone, Esq.
Attorney for Plaintiff
Frank J. Martone, P.C.
1455 Broad Street
Bloomfield, NJ 07003
973-473-3000
973-473-3243 – Fax
firm@martonelaw.com

JS 44  (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Steffan E. Manno, Individually and as Executor of the Estate of Antoinette Manno, et als

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Monmouth
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FRANK J. MARTON, P.C. - 973-473-3000
Frank J. Martone, Esq.
1455 Broad Street, Bloomfield, NJ 07003

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|                              | PTF | DEF |                                                      | PTF | DEF |
|------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State        | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State     | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                     | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. SEC. 1345 UNITED STATES OF AMERICA AS PLAINTIFF
Brief description of cause:
TO FORECLOSE A REVERSE MORTGAGE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
2/9/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# EXHIBIT "A"

## FIXED RATE NOTE – CLOSED END
### (HOME EQUITY CONVERSION)

**STATE OF NJ**

November 27, 2009

**PROPERTY ADDRESS**

72 Maple Ave.
WEST LONG BRANCH, NJ 07764
MONMOUTH COUNTY

FHA Case Number:
Loan Number:
MIN Number:

### 1.  DEFINITIONS
"Borrower" means each person signing at the end of this Note.  "Lender" means Gateway Funding Diversified Mortgage Services, LP and its successors and assigns.  "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2.  BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender up to a maximum principal amount of Six Hundred-Nine Thousand and 00/100 Dollars ($609,000.00), to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated November 27, 2009 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advances by Lender, plus interest, if not paid earlier, are due and payable on September 18, 2076. · Interest will be charged on unpaid principal at the rate of Five and 56/100 percent (5.560%) per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month and shall likewise thereafter bear interest.

### 3.  PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4.  MANNER OF PAYMENT
**(A)     Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.

**(B)     Place**
Payment shall be made at 300 Welsh Road, Bldg 5, Horsham, PA 19044 or at such other place as Lender may designate in writing by notice to Borrower.

**(C)     Limitation of Liability**
Borrower shall have no personal liability for payment of this Note. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If the Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

### 5.  BORROWER'S RIGHT TO PREPAY
A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.

Prepayment amounts will not be made available to Borrower and prepayments will not increase the amount available to Borrower for Loan Advances

### 6.  IMMEDIATE PAYMENT IN FULL
**(A)     Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:
    (i)  A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or
    (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) retains a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

**(B)     Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

NOTE

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C)      Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees associated with enforcement of this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D)      Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph.  A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**7.      WAIVERS**
Borrower waives the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.      GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.      OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note.  Lender may enforce its rights under this Note only through sale of the Property.

**10.      RELATIONSHIP TO SECOND NOTE**
**(A)      Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B)      Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:
    (i)      This Note is assigned to the Secretary; or
    (ii)      The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C)      Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:
    (i)      Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or

    (ii)      Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Dated: November 27, 2009

_Antoinette Manno_
Antoinette Manno (Borrower)

**EXHIBIT "B"**

**FIXED RATE MORTGAGE**
**(HOME EQUITY CONVERSION)**

Record and Return to:
MetLife Home Loans, a Division of MetLife Bank, N.A.
PO Box 8157
Edmond OK 73083

FHA Case Number:

STATE OF NEW JERSEY                MORTGAGE
THIS MORTGAGE SECURES A REVERSE MORTGAGE LOAN

THIS MORTGAGE ("Security Instrument") is given on November 27, 2009. The mortgagor is   Antoinette
Manno, a single woman whose address is  72 Maple Ave., WEST LONG BRANCH, NJ 07764 ("Borrower").
This Security Instrument is given to  Gateway Funding Diversified Mortgage Services, LP, which is organized
and existing under the laws of PA, and whose principal office address is 300 Welsh Road, Bldg 5, Horsham, PA
19044 ("Lender").   Borrower has agreed to repay to Lender amounts which Lender is obligated to advance,
including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as
this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the
same date as this Security Instrument ("Note").  This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, including all future advances, with interest, and all renewals, extensions and
modifications of the Note up to a maximum principal amount of Six Hundred-Nine Thousand and 00/100
Dollars (U.S.$609,000.00);   (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full
debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
September 18, 2076. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in MONMOUTH County, New Jersey, with the address of:

72 Maple Ave., WEST LONG BRANCH, NJ 07764, and is described more fully on Exhibit A attached to and
hereby incorporated into this Mortgage ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be
covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the
"Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the  Property and that the Property is unencumbered. Borrower warrants and will
defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.      Payment of Principal and Interest.  Borrower shall pay when due the principal of, and interest on, the

NJ 1st Mortgage – Fixed Rate

M CLAIRE FRENCH,CTY CLK
MONMOUTH COUNTY,NJ                                        -1-

INSTRUMENT NUMBER
2009135951
RECORDED ON
Dec 08, 2009
10:27:43 AM
BOOK=OR-8809
PAGE=9694
Total Pages: 9

COUNTY RECORDING   $110.00
FEES
TOTAL PAID        $110.00

Stewart Title Guaranty Co

Commitment Number:  09-12881

**SCHEDULE C**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

BEGINNING at a point on the south side of Maple Avenue distant westerly ninety-nine and eight one hundredths feet (99.08') from an iron pipe situate in the south side of said Maple Avenue, which said iron pipe is distant easterly along the south side of said Maple Avenue four hundred sixty-six and twenty-two one hundredths feet (466.22') from the intersection of the south side of said Maple Avenue with the easterly side of Elmwood Avenue; thence running (1) southerly at right angles, or nearly so, with the south side of Maple Avenue one hundred sixty-three and thirty-three one hundredths feet (163.33') to a point; thence (2) in a westerly direction from one hundred forty-four feet (144') to a point distant one hundred fifty-eight and fifty one hundredths feet (158.50') from the south side of Maple Avenue; thence (3) in a northerly direction at right angles, or nearly so, with the south side of Maple Avenue one hundred fifty-eight and fifty one hundredths feet (158.50') to a point; therein; thence (4) easterly along the south side of said Maple Avenue one hundred forty-four feet (144') to the point or place of beginning.

ALTA Commitment
Schedule C (06/17/06)                                                                (09-12881.PFD/09-12881/32)

debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts

NJ 1ˢᵗ Mortgage – Fixed Rate

-2-

evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.    **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.    **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.    **Grounds for Acceleration of Debt.**

    (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

    (b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:
        (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

NJ 1st Mortgage – Fixed Rate

-3-

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii) and (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
    (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii) Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.    No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11.    Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or

NJ 1st Mortgage – Fixed Rate

-4-

(iii) reinstatement will adversely affect the priority of the Security Instrument.

**12.    First Lien Status.**

(a) **Modification.**  .  Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a).  If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense.  If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the priority of the lien status of future loan advances.  Borrower agrees to execute such documents.  If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.**  Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13.    Relationship to Second Security Instrument.**

(a) **Second Security Instrument.**  In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.**  Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.**  Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

NJ 1st Mortgage – Fixed Rate

-5-

Branch :FOL,User :NJFO                                                                                    Station Id :SMMM

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) No Duty of the Secretary.  The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14.   Forbearance by Lender Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

15.   Successors and Assigns Bound; Joint and Several Liability.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary.  Borrower's covenants and agreements shall be joint and several.

16.   Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.   Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

18.   Borrower's Copy.  Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:
19.   Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

NJ 1st Mortgage – Fixed Rate

-6-

20.    **Foreclosure Procedure.**  If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by the Rules of Court.

21.    **Lien Priority.**  The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement.  The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose.  This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22.    **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

24.    **No Claim of Credit for Taxes.**  Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges.  Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

25.    **Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check all riders that are applicable.]

| | | |
|---|---|---|
| Condominium Rider | PUD Rider | |
| Shared Appreciation Rider | Other | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_____
ANTOINETTE MANNO (Borrower)

NJ 1st Mortgage
Page 7

**Notary Acknowledgement**

State of New Jersey
County of *MONMOUTH*

I _____*LEON LAPOINT*_____, a Notary Public in and for said county and state do hereby
certify that Antoinette Manno, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged
that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, on November 27, 2009.

Signature: _____ [SEAL]

My commission expires:            NOTARY PUBLIC
                                  LEON LAPOINT
                                MY COMMISSION EXPIRE
                                    01/27/2013

NJ 1st Mortgage
Page 8

# EXHIBIT "C"

# LEGAL DESCRIPTION

All that tract or parcel of land and premises, situate, lying and being in the Borough of West Long Branch, County of Monmouth and State of New Jersey, more particularly described as follows:

BEGINNING at a point on the south side of Maple Avenue distant westerly ninety-nine and eight one hundredths feet (99.08') from an iron pipe situate in the south side of said Maple Avenue, which said iron pipe is distant easterly along the south side of said Maple Avenue four hundred sixty-six and twenty-two one hundredths feet (466.22') from the intersection of the south side of said Maple Avenue with the easterly side of Elmwood Avenue; thence running (1) southerly at right angles, or nearly so, with the south side of Maple Avenue one hundred sixty-three and thirty-three one hundredths feet (163.33') to a point; thence (2) in a westerly direction from one hundred forty-four feet (144') to a point distant one hundred fifty-eight and fifty one hundredths feet (158.50') from the south side of Maple Avenue; thence (3) in a northerly direction at right angles, or nearly so, with the south side of Maple Avenue one hundred fifty-eight and fifty one hundredths feet (158.50') to a point; therein; thence (4) easterly along the south side of said Maple Avenue one hundred forty-four feet (144') to the point or place of beginning.

# EXHIBIT "D"

**00CDNX**

DEC 28 2009

2

RECORDING REQUESTED BY
Gateway Funding Diversified Mortgage Services, LP

AND WHEN RECORDED MAIL TO:
MetLife Home Loans, a Division of MetLife Bank,
N.A.
PO Box 8157
Edmond OK 73083

(American Freedom Assurance) Inc

FHA Case Number:
Loan Number:
Title Order Number:
FHA Originator No:
Loan Amount: 609,000.00

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE

**FOR VALUE RECEIVED**, the undersigned hereby grants, sells, assigns and transfers to

**MetLife Home Loans, a Division of MetLife Bank, N.A.,** whose address is 501 US Highway 22 (1-W COPS),
**Bridgewater, NJ 08807** all beneficial interest under that Certain Mortgage dated November 27, 2009 executed by
Antoinette Menno, a single woman, Borrower, to Gateway Funding Diversified Mortgage Services, LP, which is
organized and existing under the laws of PA, Lender, and recorded concurrently herewith in the County Recorder's
office of MONMOUTH County, NJ, describing land therein as: See Schedule A attached *Recorded 12-8-09*
*BOOK 8809 P9694*

**TOGETHER** with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Mortgage.

Gateway Funding Diversified Mortgage Services, LP

By: TONI COPPOLA
Title: VP Underwriting

STATE OF PA
COUNTY OF MONTGOMERY
On Nov. 27, 2009 before me, FREDA A. PHILLIPS
a Notary Public in and for said County and State, personally appeared
TONI COPPOLA personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal

Signature _____   Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
FREDA A. PHILLIPS, Notary Public
Bensalem Twp., Bucks County
My Commission Expires June 29, 2010

M CLAIRE FRENCH
MONMOUTH COUNTY,NJ
INSTRUMENT NUMBER
2009143363
RECORDED IN
Dec 29, 2009
8:30:12 AM
BOOK:OR-8813
PAGE#2573
Total Pages: 2

COUNTY RECORDING FEES   $50.00
TOTAL PAID   $50.00

Stewart Title Guaranty Co

Commitment Number: 09-12881

**EXHIBIT A**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

BEGINNING at a point on the south side of Maple Avenue distant westerly ninety-nine and eight one hundredths feet (99.08') from an iron pipe situate in the south side of said Maple Avenue, which said iron pipe is distant easterly along the south side of said Maple Avenue four hundred sixty-six and twenty-two one hundredths feet (466.22') from the intersection of the south side of said Maple Avenue with the easterly side of Elmwood Avenue; thence running (1) southerly at right angles, or nearly so, with the south side of Maple Avenue one hundred sixty-three and thirty-three one hundredths feet (163.33') to a point; thence (2) in a westerly direction from one hundred forty-four feet (144') to a point distant one hundred fifty-eight and fifty one hundredths feet (158.50') from the south side of Maple Avenue; thence (3) in a northerly direction at right angles, or nearly so, with the south side of Maple Avenue one hundred fifty-eight and fifty one hundredths feet (158.50') to a point; therein; thence (4) easterly along the south side of said Maple Avenue one hundred forty-four feet (144') to the point or place of beginning.

72 Maple Avenue
West Long Branch NJ 07764

ALTA Commitment
Schedule C

(09-12881.PFD/09-12881/34)

# EXHIBIT "E"

Branch :FOL,User :NJFO                                                                 Station Id :SMMM

Inst. # 2012108592 - Page 1 of 4

## Monmouth County Document Summary Sheet

| | Transaction Identification Number | 1834430 | 1029352 |
|---|---|---|---|

MONMOUTH COUNTY CLERK
PO BOX 1251
MARKET YARD
FREEHOLD NJ 07728

**Recorded Document to be Returned by Submitter to:**
RELIABLE DOCUMENT RETRIEVAL
2111 20TH STREET
SACRAMENTO, CA 95818

**Official Use Only**

M CLAIRE FRENCH,CTY CLK
MONMOUTH COUNTY,NJ

INSTRUMENT NUMBER
2012108592
RECORDED ON
Oct 11, 2012
8:55:34 AM
BOOK:OR-8975 PAGE:4772
Total Pages: 4

COUNTY RECORDING FEES   $50.00
TOTAL PAID              $50.00

| Submission Date *(mm/dd/yyyy)* | | 10/11/2012 |
|---|---|---|
| No. of Pages *(excluding Summary Sheet)* | | 2 |
| Recording Fee *(excluding transfer tax)* | | $50.00 |
| Realty Transfer Tax | | $0.00 |
| Total Amount | | $50.00 |
| **Document Type** | ASSIGNMENT/MORTGAGE | |

**Electronic Recordation Level**
L2 - Level 2 (With Images)

**Municipal Codes**
WEST LONG BRANCH                          5301

**Bar Code(s)**

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

B61176A5-9E1C-E1EE-6F9C-E4AA4440D274/1834430 1029352                               Page 1 of 2

MONMOUTH,NJ                              Page 1 of 4                    Printed on 11/16/2017 12:27:01 PM
Document: MTG ASN 8975.4772

Inst. # 2012108592 - Page 2 of 4

## Monmouth County Document Summary Sheet

| ASSIGNMENT/M ORTGAGE | Type | ASSIGNMENT/MORTGAGE | | | | |
|---|---|---|---|---|---|---|
| | Consideration | | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 09/28/2012 | | | | |
| | Reference Info | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** | |
| | OR | 8809 | 9694 | 2009135951 | | |

| MORTGAGOR | Name | | Address | |
|---|---|---|---|---|
| | METLIFE HOME LOANS | | | |
| | METLIFE BANK | | | |
| | ANTOINETTE MANNO | | | |

| ASSIGNEE | Name | | Address | |
|---|---|---|---|---|
| | CHAMPION MORTGAGE COMPANY | | | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*DO NOT REMOVE THIS PAGE.*
COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.
RETAIN THIS PAGE FOR FUTURE REFERENCE.

B61176A5-9E1C-E1EE-6F9C-E4AA4440D274/1834430 1029352      Page 2 of 2

Branch :FOL,User :NJFO                                                                    Station Id :SMMM

Inst. # 2012108592 - Page 3 of 4

# NEW JERSEY

COUNTY OF **MONMOUTH**
LOAN NO.

POOL NO.

[barcode]

~~Assignment-Interv.-Recorded~~

PREPARED BY:
SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
*SECURITY CONNECTIONS INC.*
*240 TECHNOLOGY DRIVE*
*IDAHO FALLS, ID 83401*
*PH: (208)528-9895*
*ATTN:   TERRILL NIELSON*

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: That on the — day of ___ **SEP 2 8, 2012** ___
**METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A.** 1555 W.WALNUT HILL LANE #200, IRVING, TX 75038

_____, Party of the First Part,
in consideration of the sum of One Dollar ($1.00) lawful money of the United States of America and other good
and valuable consideration, to it in hand paid by **CHAMPION MORTGAGE COMPANY** **350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**

_____, Party of the Second Part,
at or before  delivery of these presents,  the receipt whereof is hereby acknowledged,  has granted, bargained,
sold,  assigned,  transferred  and  set over unto the said  Party of the Second Part, its  successors or assigns,
a certain Indenture of Mortgage, dated the ___ **27th** ___ day of _____ **NOVEMBER** _____, ___ **2009** ___, made
by **ANTOINETTE MANNO, A SINGLE WOMAN**

to secure the payment of the sum of **SIX HUNDRED NINE THOUSAND and NO/100-----**
($ **609,000.00** ) Dollars for the property located in the **COUNTY** of **MONMOUTH**
which Mortgage is recorded in the Office of the County Clerk of **MONMOUTH** and State of New Jersey,
recorded on ___ **DECEMBER 8, 2009** in Document No. __ **2009135951** ___, Book __ **OR-8809** ___
or Mortgages, Page __ **9694** ___.
PROPERTY ADDRESS: **72 MAPLE AVE., WEST LONG BRANCH, NJ 07764**

TOGETHER with the bond or obligation therein described,  and the money due and to grow due thereon,  with the
interest.  To have  and  to hold the same unto the said  Party of the Second Part,  its successors or assigns
forever,  subject to the provision in the said  Indenture of Mortgage mentioned:  and it does hereby make,
constitute, and appoint the said  Party of the Second Part  its true and lawful attorney, irrevocable, in its
name, or otherwise,  but at its proper costs and charges, to have, use and take all lawful ways and means for
the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as it
might or could do if these presents were not made.

Page 1 of 2

Inst. # 2012108592 - Page 4 of 4

LOAN NO

In Witness Whereof, the said Party of the First Part hath caused this instrument's execution; attested by its
_____, and these presents to be signed by its
*LIMITED VICE PRESIDENT*                                   . This ____ SEP 2 8 2012 ____.

METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A.

WITNESS    **Sarita R Reeves**

BY    **Janice Robertson**
*LIMITED VICE PRESIDENT*

STATE OF *TEXAS* _____)
                             )
COUNTY OF *DALLAS* _____)

On the ____ day of _____ SEP 2 8, 2012 ____, before me, . **Felita S. McDuffie** ____,
personally appeared . **Janice Robertson** ____ and _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) who executed
the within instrument as *LIMITED VICE PRESIDENT*
and _____ on behalf of the
*METLIFE HOME LOANS, A DIVISION OF METLIFE BANK, N.A.*
_____
pursuant to its by-laws or a resolution of the board of directors of the said Corporation; and for the voluntary
act and deed of said Corporation, in presence of deponent, who thereupon subscribed his / her name thereto as
attesting witness.   WITNESS my hand and official seal.

**Felita S. McDuffie**
NOTARY PUBLIC

FELITA S MCDUFFIE
My Commission Expires
July 8, 2016

(NMRI.NJ.2)                        Page 2 of 2

# EXHIBIT "F"

JUN 2 1 2013

RECORDING REQUESTED
AND PREPARED BY:
Celink
PO Box 40724
Lansing, Michigan 48901
(517) 321-8980
THERESA M. WOHLFERT - CELINK

And When Recorded Mail To:
Celink
PO Box 40724
Lansing, Michigan 48901
Customer#:
Service#:

*M. CLAIRE FRENCH,CTY CLK*
*MONMOUTH COUNTY,NJ*
*INSTRUMENT NUMBER*
*2013069537*
*RECORDED ON*
*Jun 21, 2013*
*11:56:59 AM*
*BOOK OR 9020*
*PAGE 9636*
*Total Pages: 1*

*COUNTY RECORDING*
*FEES*
*TOTAL PAID*

*$40.00*
*$40.00*

———————— Space above for Recorder's use ————————

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, CHAMPION MORTGAGE COMPANY, 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067-0000. By these presents does convey, grant, bargain, sell, assign, transfer and set over to: THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, 451 7TH STREET SW, WASHINGTON, DC 20410-0000. The described Mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $609,000.00 is recorded in the State of NEW JERSEY, County of MONMOUTH Official Records, dated NOVEMBER 27, 2009 and recorded on DECEMBER 08, 2009, as Instrument No. 2009135951, in Book No. 8809, at Page No. 9694.

Original Mortgagor: ANTOINETTE MANNO, A SINGLE WOMAN. Original Mortgagee: GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES LP.

Date: JUNE 10, 2013
CHAMPION MORTGAGE COMPANY

By: _Jane Ward_
JANE WARD, VICE PRESIDENT

State of   **MICHIGAN**     }
County of   **CLINTON**     } ss.

On _6-10-2013_, before me, THERESA M. WOHLFERT, a Notary Public, personally appeared JANE WARD, VICE PRESIDENT personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. Witness my hand and official seal.

_Theresa M. Wohlfert_
(Notary Name): THERESA M. WOHLFERT

Notary Public in and for IONIA County
Acting in CLINTON County, MICHIGAN State
My Commission Expire: 09/10/2017

# EXHIBIT "G"

## Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| | |
|---|---|
| HUD Field Office | |

| To | HUD/OFFICE OF GENERAL COUNSEL |
|---|---|

| 1. FHA Case Number | 2. Account Number |
|---|---|
| | |

| 3. Mortgagor/Owner  ANTOINETTE MANNO | 4. Social Security Number  XXX-XX |
|---|---|
| 5. Co-Mortgagor | 6. Social Security Number |

| 7. Name of original mortgagor if different from above | 8. Property Address  72 MAPLE AVE  WEST LONG BRANCH, NJ 07764 |
|---|---|

### Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance  $335,126.34 | Escrow Balance | Interest Rate  5.560% | Term |
|---|---|---|---|---|
| Type of mortgage  HECM | Last payment applied | Date | Date of oldest unpaid interest installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Please Note: The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

| Part 2. Assumption Information / Bring Current Information | | Part 3. Payoff Information | |
|---|---|---|---|
| Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard insurance coverage. | | Principal Balance | $335,126.34 |
| Bring Current Amount  Principal | $335,126.34 | Interest Due | $182,621.96 |
| Interest | $182,621.96 | Service Charge | $2,850.00 |
| Tax Escrow Required | | Late Charge | |
| Service Charge | $2,850.00 | Returned Check Charge | |
| Late Charge | | Advance Amount | |
| Tax Advance | | Tax Escrow Applied | |
| Other (specify) MIP | $24,542.77 | Other (specify) MIP | $24,542.77 |
| Interest on Advances | | Interest on Advances | |
| Total to Bring Current  as of: 10/27/2017 | $545,141.07 | Taxes Paid but Not Posted | |
| Current Monthly Payment  Principal and Interest | | Total Payoff Amount  as of: 10/27/2017 | $545,141.07 |
| Tax Escrow | | Per Diem Service Charge | |
| Service Charge | | Per Diem Interest | $90.51 |
| Total Monthly Payment  See back of page if mortgage is 235 | | | |

| Prepared by  LAURA THONGKHAMTHANOME | Title  CASH ANALYST | Date  10/27/2017 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by  REBECCA L. MIDDLEBROOKS | Title  CASH MANAGEMENT | Date  10/27/2017 |
|---|---|---|

form HUD-898 (1/89)

# EXHIBIT "H"

DEC 07 2009          8

## SECOND FIXED RATE MORTGAGE
## (HOME EQUITY CONVERSION)

Record and Return to:
MetLife Home Loans, a Division of MetLife Bank, N.A.
PO Box 8157
Edmond OK 73083

(American Freedom)

FHA Case Number:

STATE OF NEW JERSEY

### MORTGAGE
### THIS MORTGAGE SECURES A REVERSE MORTGAGE LOAN

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on November 27, 2009. The mortgagor is **Antoinette Munno, a single woman**, whose address is **72 Maple Ave., WEST LONG BRANCH, NJ 07764** ("Borrower"). This Security Instrument is given to the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 Seventh Street, S.W., Washington, D.C. 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, including all future advances, with interest, and all renewals, extensions and modifications of the Second Note up to a maximum principal amount of Six Hundred-Nine Thousand and 00/100 Dollars (U.S.$609,000.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on September 18, 2076. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in MONMOUTH County, New Jersey, with the address of:

**72 Maple Ave., WEST LONG BRANCH, NJ 07764**, and is described more fully on Exhibit A attached to and hereby incorporated into this Mortgage ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

NJ 2nd Mortgage – Fixed Rate

M CLAIRE FRENCH,CTY CLK
MONMOUTH COUNTY,NJ                                    -1-

INSTRUMENT NUMBER
2009135956
RECORDED ON
Dec 08, 2009
10:31:43 AM
BOOK:OR-8809
PAGE:9703
Total Pages: 8

| COUNTY RECORDING FEES | $100.00 |
| TOTAL PAID | $100.00 |

Stewart Title Guaranty Co

Commitment Number:  09-12881

**SCHEDULE C**
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

BEGINNING at a point on the south side of Maple Avenue distant westerly ninety-nine and eight one hundredths feet (99.08') from an iron pipe situate in the south side of said Maple Avenue, which said iron pipe is distant easterly along the south side of said Maple Avenue four hundred sixty-six and twenty-two one hundredths feet (466.22') from the intersection of the south side of said Maple Avenue with the easterly side of Elmwood Avenue; thence running (1) southerly at right angles, or nearly so, with the south side of Maple Avenue one hundred sixty-three and thirty-three one hundredths feet (163.33') to a point; thence (2) in a westerly direction from one hundred forty-four feet (144') to a point distant one hundred fifty-eight and fifty one hundredths feet (158.50') from the south side of Maple Avenue; thence (3) in a northerly direction at right angles, or nearly so, with the south side of Maple Avenue one hundred fifty-eight and fifty one hundredths feet (158.50') to a point; therein; thence (4) easterly along the south side of said Maple Avenue one hundred forty-four feet (144') to the point or place of beginning.

ALTA Commitment
Schedule C (06/17/06)

(09-12881.PFD/09-12881/32)

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

NJ 2nd Mortgage – Fixed Rate

-2-

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

9. **Grounds for Acceleration of Debt.**
   (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
   (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

   (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property); or

   (iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

   (iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

   (v) An obligation of the Borrower under this Security Instrument is not performed.

   (b) **Notice to Lender.** Borrower shall notify the Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

NJ 2nd Mortgage – Fixed Rate

-3-

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10.    No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11.    Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately proceeding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12.    Second Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the priority of the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument

NJ 2nd Mortgage – Fixed Rate

-4-

unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower has also executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or under the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

NJ 2nd Mortgage – Fixed Rate

-5-

16.    **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.    **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18.    **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19.    **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.    **Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by the Rules of Court.**

21.    **Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

22.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

NJ 2nd Mortgage – Fixed Rate

-4-

23. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

24. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check all riders that are applicable.]

| | | |
|---|---|---|
| Condominium Rider | | PUD Rider |
| Shared Appreciation Rider | | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_Antoinette Manno_ _____
ANTOINETTE MANNO (Borrower)

### Notary Acknowledgement

State of New Jersey
County of  MONMOUTH

I  LEON LAPOINT  , a Notary Public in and for said county and state do hereby certify that Antoinette  Manno, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, on November 27, 2009.

Signature: _____    [SEAL]

NOTARY PUBLIC
LEON LAPOINT
MY COMMISSION EXPIRES
01/27/2013

NJ 2nd Mortgage
Page 7